# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

Tampa Division

ABDUL REHMAN FARRUKH

Case No: **8:20-cv-00073-T33-TGW**

Plaintiff(s)

*Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space & attach an additional page with the full list of names.)*

Jury Trial (check one):   ✓ Yes   ☐ No

**–v–**

UNIVERSITY OF SOUTH FLORIDA BOARD OF TRUSTEES, USF, PATRICIA ANZALONE, PAUL ATCHLEY, SANJUKTA BHANJA, ANNETTE BLOISE, TAPAS DAS, VINY K. GUPTA, CE'ERA M HORTON, KELLY HALL, GLORIA LATTER, KINGSLEY A. REEVES, JR., MARCIA TAYLOR, JAMES SCHWARTZ.

*Defendant(s)*

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space & attach an additional page with the full list of names.  Do not include addresses here.)*

## SECOND AMENDED COMPLAINT FOR EQUITABLE & INJUNCTIVE RELIEF & DAMAGES, & DEMAND FOR JURY TRIAL

Comes now Plaintiff, Abdul Rehman Farrukh files this Second Amended Complaint and states and alleges:

### JURISDICTION & VENUE

1. This is a personal action for damages arising from deprivations of all of Plaintiff's Civil Rights under 42 U.S.C. § 1981, & rights secured by the Civil Rights Acts of 1964, as amended, & 42 U.S.C. § 1983, as amended, & other laws of Rights under the Constitution of the United States, & Rights in Contract that were violated by the Defendant under "color of Law". Plaintiff seeks equitable relief and damages including declaratory relief and injunctive relief; to properly award a bachelors degree in Industrial Engineering, front pay; lost pay and benefits; liquidated damages; compensatory damages; attorneys' fees, costs and expenses; and all other relief this Court deems just and proper.

2. Jurisdiction is conferred by this Court by 42. U.S.C § 1981, 42 U.S.C. § 1983, Title VI 42 U.S.C. § 2000d of the Civil Rights Act of 1964 & Florida Statues 768.28.

3. The Honorable Court has Jurisdiction over this matter pursuant to 28 U.S.C. § 1331 & 1343 due to the civil rights violations alleged herein.

4. Venue is proper in this Court because the violations alleged herein occurred within the geographical area covered by this Court.

### THE PARTIES & THEIR RELATIONSHIP

5. At all relevant times herein, Plaintiff, Abdul Rehman Farrukh, was & is a Pakistani citizen, non-citizen resident of the State of Florida & the City of Tampa, Hillsborough County, Florida. At all relevant times, the Plaintiff was a student of the Defendant USF.

6. Defendant, the University of South Florida (USF) is a State of Florida public entity subject to suit in this Court.

7. Patricia Anzalone, who is a US citizen, is a faculty member at the Department of Industrial & Systems Engineering & was employed at all relevant times by USF. She is being sued in Individual capacity only.

8. Kingsley Reeves, who is a US citizen, is a faculty member at the Department of Industrial & Systems Engineering & was employed at all relevant times by USF. He is being sued in Individual capacity only.

9. Tapas Das, who is a US citizen, is a faculty member at the Department of Industrial & Systems Engineering & was employed at all relevant times by USF. He is being sued in Individual capacity only.

10. Sanjukta Bhanja, who is a US citizen, is a faculty member & Associate Dean for Academics & Student Affairs at the college of engineering & was employed at all relevant times by USF. She is being sued in Individual capacity only.

11. Vinay K Gupta, who is a US citizen, is a faculty member & chair, academic integrity review board, College of Engineering. He is being sued in Individual capacity only.

12. Marcia Taylor, who is a US citizen, is a Director, Office of International Services & was employed at all relevant times by USF. She is being sued in Individual capacity only.

13. Kelly Hall, who is a US citizen, is Associate Director, Office of International Services USF & was employed at all relevant times by USF. She is being sued in Individual capacity only.

14. Annette Bloise, who is a US citizen, is Immigration Intake Assistant, Office of International Services & was employed at all relevant times by USF. She is being sued in Individual capacity only.

15. Paul Atchley, who is a US citizen, is the Senior Associate Vice President & Dean of Undergraduate Studies & was employed at all relevant times by USF. He is being sued in Individual capacity only.

16. Gloria Latter, who is a US citizen, is IMSE's academic program specialist, Department of Industrial & Systems Engineering & was employed at all relevant times by USF. She is being sued in Individual capacity only.

17. Ce'era M. Horton, who is a US citizen, is an undergraduate adviser, Department of Economics, & was employed at all relevant times by USF. She is being sued in Individual capacity only.

18. James Schwartz, who is a US citizen, is an Immigration Adviser, Office of International Services & was employed at all relevant times by USF. He is being sued in Individual capacity only.

**COUNT 1 AGAINST DEFENDANT USF**
**RACE & NATIONAL ORIGIN DISCRIMINATION (Title VI)**

19. Title VI of the Civil Rights Act of 1964 prohibits discrimination on the basis of race, color, or national origin in programs & activities operated by recipients of federal funds.

20. As a public institution of education receiving federal and State of Florida funds, USF is subject to suit.

21. Farrukh was initially accepted to USF as an Undergraduate non-degree seeking Student at INTO USF on a pathway program in or around the August 2012. Progressively, the Plaintiff was admitted to USF as a degree seeking student after the completion of the pathway program in or around June 2013.

22. On September 10, 2014 Gloria Latter, intentionally & wrongfully reported Farrukh to the USF police department for an alleged "disturbance compliant" when Plaintiff was merely patiently waiting at the Department suite in an attempt to secure an appointment with Defendant Das that Plaintiff urgently needed & had been trying for weeks prior to obtain.(Exhibit A)

23. During virtually every interaction thereafter Farrukh had with Defendant Latter, Plaintiff suffered from being the brunt of Defendant Latter's intentional & wrongful discriminatory actions. At one instance in or around June 2016, Latter openly mocked & defamed Farrukh's academic record stating falsely & damagingly, *"He's a failing student. You should have already been expelled from the program…….".* The statement was uttered in the presence of students & faculty including Defendant Reeves who did nothing to stop Latter from making inappropriate remarks. Then, in Fall 2014 & again in Fall 2016, Latter & Reeves worked in concert to deny Farrukh permits to enroll into courses that he had requested & was eligible to register. Reeves & Latter treated Farrukh with more hostility & lack of helpfulness than White American students were subjected by them.

24. In or around October 2015, Farrukh's lawful immigration status was suspended by USF for failure to pay a $200 SEVIS fee imposed by DHS for the purpose of student visa. This is a fee that is paid in advance before the issuance of Visa but in rare cases, the Visa can be issued in advance, & the fees paid later. USF international services via Schwartz lied, intentionally & maliciously informed Farrukh that failure to pay the SEVIS fee would result in the suspension of his visa status & that he would be required to leave the country & reapply for a visa or eventually deported. Farrukh then made SEVIS fee payment in or around October 2015 to resolve the matter. International Services USF then followed up & intentionally lied and maliciously misinformed Farrukh that he was still in violation of the Visa status for retroactively dropping classes from a previous semester & that he would need either, travel outside the US & reenter, or file a reinstatement of the SEVIS. Reinstatement petitions are often times denied by the USCIS & that in turn causes the student to quit study in the U.S. & exit the U.S. immediately. Farrukh subsequently contacted the Department of Homeland Security (DHS) through the Student & Exchange Visitor Program (SEVP) Help Desk to seek clarification on the alleged newfound violation of visa status. The SEVP help desk emailed Farrukh contradicting the International Student Services stating that a failure to pay the fee, retroactive withdrawal of classes from a previous semester & late payment of tuition were all invalid reasons to suspend a student's lawful immigration status & that the student is still considered maintaining lawful immigration status. The email also clarified that only a *"correction request"* by the school's (USF) immigration staff would be enough to resolve the matter. Farrukh showed these emails to Defendant Taylor & to James Schwartz. Defendant Taylor was thereafter unavailable to handle Farrukh's queries & the matter was forwarded to Defendant Hall. (Exhibit B)

25. On Monday November 16, 2015 Farrukh was offered an on-campus employment offer at INTO USF which was to begin in January 2016 pending an immigration check. Then, In or Around December 2015, Defendant Hall assured Farrukh that his immigration status would be taken care of & he would no longer need to travel abroad or seek reinstatement. On December 18th, 2015, Farrukh's offer of employment was rescinded

due to the loss of lawful immigration status, which *stated "After a carefully review from International Services, we received a note saying that your reinstatement will take many months to be approved. According to the Immigration department, you will not be able to be considered for Spring employment."* This was incorrectly stated by Hall to Farrukh's would be employer because, only 3 days later, Hall had informed Farrukh that the issue would be resolved immediately, therefore, by implication, Farrukh was eligible to take employment next semester. (Exhibit C)

26. On or around December 21st,2015, Defendant Hall informed Farrukh that his documents would be updated, & immigration status promptly corrected after the winter break scheduled between December 24th-January 1st. But on or Around January 2nd, 2016, DHS Special Agent W. Lee Sullivan raided Farrukh's residence & confiscated his passport & SEVIS documents citing USF reports via Defendant Taylor that Farrukh was not maintaining lawful immigration status & that formal deportation proceedings against Farrukh would now be initiated. Agent Sullivan & Defendant Taylor, in their separate interactions with Farrukh around that time period highlighted the personal relationship they both maintained with each other. On demanding an incident report from the DHS agent, Farrukh was informed that no incident report was generated for this visit, subsequent confiscation of passport & other immigration documents. On January 7th, 2016 Defendant Hall corrected Farrukh's Immigration record & provided new documentation to reflect the update & correction. Farrukh's confiscation of passport led to a delay in wire transfer resulting in nonpayment of tuition for the Spring 2016 semester. Farrukh's passport was returned in or around the 4th week of January, after the tuition payment had passed, rendering Farrukh unable to enroll for the Spring 2016 semester. Thereafter, Farrukh filed two petitions for the reinstatement of classes with the Office of the Registrar & the Cashier's Office. Both the appeals were denied citing lack of documentation that supported Farrukh's claims that DHS agent Sullivan had confiscated his passport & that Plaintiff was in danger of being deported & also because a lack of a government ID delayed in the transfer of monies to pay tuition.

27. In May 2016, weeks after the semester had ended, Defendant Taylor emailed Farrukh informing him that she would be willing to write a letter to the USF Cashier's Office that would support Plaintiff's claim of passport confiscation by the DHS special agent Sullivan, thereby causing a delay in the payment of fees.(Exhibit D)

28. In response to her email, Farrukh informed Defendant Taylor that he no longer had any ability to reinstate the courses for the past Spring 2016 semester as the semester had already ended. Farrukh further stated that he was & currently remains under extreme mental & emotional stress from the beginning of the semester in January & would like to file a no course load request under 8 CFR 214.2(f). 214.2(f)(6)(iii)(B) of the USCIS. Farrukh informed Defendant Taylor of the negative impact reinstatement would now have on Farrukh's academic progression & financial situation. Defendant Taylor responded back stating that it was too late for any reduced course load option but that

a retroactive reinstatement of classes might still be possible. Farrukh again reminded Defendant Taylor of the negative impact reinstatement would now have on Farrukh's academic record, progression & deepen the financial burden. Farrukh informed Defendant Taylor of his intent to not reinstate & file for a no course load based on a medical excuse.

29. DHS/SEVP guidance contradicts Defendant Taylor's claims & states otherwise, confirming that a late/retroactive *"no course load"* request is possible at the discretion of the School's DSO.

30. In May 2016 Farrukh requested the USF International Services an invitation letter in the name(s) of his parents. Farrukh's parents, upon learning of the recent events were extremely concerned & wanted to visit USF to come & assess the situation by meeting with USF officials. On May 16, 2016, Farrukh was informed via email that the requested invitation letters were ready for pick up. Later, Farrukh approached the USF International Student Services & presented his student ID to Defendant Bloise. Defendant Bloise's attitude was immediately & unjustifiably confrontational & rude, & she referred to Farrukh as a "special case." Defendant Bloise then retrieved the invitation letters from the drawer & shredded them before disposing the documents into a trash bin. Defendant Bloise then told Farrukh that she had just heard from Defendant Taylor via text to hold the invitation letters because Farrukh was not enrolled in classes; this despite Farrukh then being enrolled for 2 classes during Summer 2016 at USF. Farrukh reminded her that his immigration status has no connection to the invitation letters for his parents who needed to present the document to the US Customs & Border Patrol agent upon entry into US. Defendant Bloise replied saying she had instructions from Defendant Taylor to withhold the invitation letters from Plaintiff. Bloise did not treat Farrukh's fellow White American students in ways Farrukh was treated.

31. On August 8, 2016, Farrukh enlisted into the United States Army Reserve. As a part of a background investigation, Farrukh's background investigator made attempts to acquire information about Farrukh with the Department of Industrial & Systems Engineering at USF. All attempts failed to verify Farrukh's affiliation with his Department & that lack of response affected the favorable outcome of Farrukh's background investigation. The investigator noted in his final report: *"No available individuals in the office of the Subject's major (Industrial Engineering) had knowledge of the Subject."* The discrepancy that emerged due to the department official's non-cooperation or lack thereof with the background investigator negatively contributed in the adjudication processing of the background check.(Exhibit E)

32. On August 25th, 2016 Defendant Taylor informed Farrukh of his SEVIS termination which meant that he had lost his lawful immigration status, rendering Farrukh to deportation action, barring him from course registration & made him ineligible to all employment prospects during school & post-graduation. Defendant Taylor stated that this was done due to Farrukh's non-enrollment for the Spring 2016 semester. Defendant

6

Taylor further stated *"Due to your behavior on previous visits to our office, you are only permitted to meet with me. I ask that you send me an email (taylorm@usf.edu) if you would like to meet & I will fit you into my schedule. You will not be permitted to walk in & demand a meeting."*

33. In the email Taylor failed to specifically identify the kind of behavior in Farrukh's previous visit(s), since there was only one single interaction during that time period, that was in any manner adversarial or unacceptable. This did not represent the first event where school officials were falsely accusing Farrukh of misconduct. As evidence that will be introduced herein, Farrukh possesses an audio recording of his interaction with Defendant Bloise. The interaction took place in the common area, an open front entrance to the International Services office near the space where Defendant Bloise was seated in the proximity to staff from the Education Aboard Office & other students. After this email from Defendant Taylor, Farrukh's classes for the upcoming Fall semester were dropped & his registration was put on hold. It took Farrukh approximately 2 months to get back enrolled fully into the Fall 2016, causing Farrukh to not be able to meet many important class coursework deadlines for the critical senior year courses he was taking that semester. Taylor & Bloise did not treat Farrukh's White American peer students in those ways.

34. International Students at USF frequently encounter adversarial & rude behavior from the staff at USF international services. International students such as Farrukh fear retaliation if they complained about the behavior & actions of USF IS staff however, a quick search on a popular social media website returns with many posts alleging wrong & adversarial behavior international students have experienced from the USF international services staff. The only commonality associated between the Plaintiff & these individuals is that of being an International Student at USF.  (Exhibit F)

35. In January 2017, Farrukh experienced similar discriminatory behavior by Defendant Anzalone during Farrukh's meeting office with Anzalone during her course office hours. Defendant Anzalone is a Hispanic female & is commonly acknowledged to treat students of racial backgrounds other than Hispanic less favorably than Hispanic USF students. In her classroom, Defendant Anzalone has several times openly accused "Middle Eastern students" of cheating on exams & on course work.

   a) Upon arrival, Anzalone opened the door. Farrukh greeted her but heard no response except her staring & inquiring why Farrukh was there to see her. Farrukh asked if he could walk into her office & if he could sit down to discuss a matter. Anzalone quietly turned around, walked back to her chair & signaled with a hand motion to take the seat that was placed in front of her desk. Farrukh sat down & explained to her that he was enrolled in the same course last spring semester & passed the course with a grade of 'C' but that Farrukh's courses had been dropped & enrollment cancelled due to Farrukh's immigration status being wrongly suspended by the USF International Student Services. Farrukh indicated that he was there to inquire as to

7

whether a policy existed under such circumstances that would allow an instructor to award a student with a grade that was earned in a previous semester for the same course. Farrukh also informed her that his course load this semester was 18 credit hours, including traveling twice a week out of city to attend a class & that he was there to inquire about possibly reducing this burden. On hearing this, Anzalone replied, saying that she couldn't help him in this matter & proceeded with a series of personal & racially defamatory remarks against Plaintiff & Plaintiff's family, saying that Farrukh always comes to her office with personal, family & immigration issues & questioned why Farrukh always has problems to discuss, implying that she did not like Farrukh's presence & that Farrukh was wasting her time.

b) Farrukh politely reminded Defendant Anzalone that one of the primary purposes of an instructor's office hours was to facilitate a student's discussion of their academically related problems & concerns with an instructor. In an intimidating & taunting tone that was clearly discernible by students standing outside of Defendant Anzalone's office door, Defendant indicated she would not help Plaintiff. Because of this experience, Farrukh was inclined to avoid any physical contact/meeting with Anzalone for his own personal self-respect & safety. Anzalone Treated Farrukh with more hostility & lack of helpfulness than White & Hispanic American students were subjected by her.

36. In Spring (January-May) 2017 semester, Farrukh's would-be second last semester at USF, Farrukh enrolled in the online section of the Statistical Quality Control (ESI 4221) course with Defendant Anzalone as the course instructor.

37. In March 2017, Farrukh took the second of the three exams for the Statistical Quality Control Course, where Farrukh was accused by Defendant Anzalone of an academic integrity violation & awarded a zero for the exam & dismissed from the course with a final grade of 'F' on the official transcript.

38. On April 20th, 2017, during interaction with Defendant Reeves, the undergraduate program director & Defendant Anzalone, Farrukh vehemently denied the cheating accusation or violating the academic integrity policy 3.027 at USF & exam rules.

39. On April 21st, 2017, Defendant Anzalone notified Farrukh of her decision to falsely fail & award zero for the exam in ESI 4221 Statistical Quality Control Course. Anzalone told Farrukh that if he filed an academic review that he could be looking at a FF.

40. Defying the dismissal from the Statistical Quality Control course, Farrukh continued to participate in class sessions & assignments/projects including course projects, team presentation, reports, peer review scores & more. Farrukh prepared & took the final exam for the course until the conclusion of course & semester end date.

41. After the alleged academic integrity inquiry, Farrukh's assignments, including exams 2 & 3, course projects, team presentation, reports, peer review scores & more were left ungraded by Anzalone at the conclusion of the Spring 2017 semester.

42. Subsequently, On 25th April 2017, Farrukh appealed Defendant Anzalone's decision to Defendant Das. Defendant Das upheld Defendant Anzalone's decision of awarding the failing grade for cheating.

43. On May 30th, 2017, Farrukh appealed the alleged academic dishonesty accusation with the College of Engineering. On June 15th, 2017 the College of Engineering's Academic Integrity Review Board chaired by Defendant Gupta met with Farrukh, Defendant Anzalone, Defendant Bhanja & three students on the AIRB committee & conducted a meeting to hear the alleged accusations & the Plaintiff's statement in response to the same.

44. At the start of the AIRB meeting, Defendant Bhanja left the meeting room (when she should have not) & did not return for the remainder duration of the meeting session.

45. Defendant Gupta then asked Farrukh to make a statement & present his appeal.

46. Farrukh informed the Board that his appeal written statement had already been provided. At that time, Farrukh, again, affirmed his unequivocal denial of the unfounded & racially motivated alleged cheating accusation by Defendant Anzalone.

47. Defendant Anzalone then made her statement & presented Farrukh's formula sheet & the exam cover page in front of the Board members. Defendant Anzalone stated that Farrukh carried "solved problems" on his formula sheet & that this constituted cheating. She further stated that Farrukh erased a portion of the theory information on the formula sheet & this was also in violation of exam rules. Interestingly, Defendant Anzalone had no clue as to what level of sanction she had applied on Farrukh or what the sanction constituted. Defendant Gupta then intervened & helped her make her decision, something she should have known & understood at the very moment she had realized that there was an alleged academic integrity violation on Farrukh's formula sheet.

48. Objecting to Defendant Anzalone's newfound & previously unalleged allegation of erasure of information, Farrukh requested Defendant Gupta's permission to make a response in Plaintiff's defense to this new charge. Defendant Gupta promptly & rudely denied Farrukh's request for a rebuttal adding *"You're going to make things worse for yourself"*

49. The meeting concluded thereafter. While Farrukh was leaving the meeting room, he noticed that Defendant Anzalone was still seated & wanted to speak in private with Defendant Gupta but was waiting for Farrukh to leave the room when she should have left & not been allowed to speak with Gupta because Anzalone was an opposing party & Gupta acted as a neutral examiner of facts.

50. On June 19th, 2017 the AIRB presented its recommendations to Defendant Bhanja. (Exhibit G)

51. On June 22nd, 2017, Defendant Bhanja emailed Farrukh notifying of the Board's decision to uphold the grade sanction.

52. On June 2nd, 2017, The Diversity, Inclusion & Equal Opportunity Office at USF formally started the investigation into Farrukh's racial discrimination complaint against Defendant Anzalone.

53. In support of this complaint, Farrukh provided an opinion by Dr. Tashfeen Mahmood Azhar. Dr. Azhar earned his PhD in Industrial Engineering from the University of South Florida & presently chairs the department of operations research at an accredited private university. He had reviewed Farrukh's formula sheet in question in Plaintiff's cheating allegation matter & had fully verified that there is no evidence, whatsoever, of any solved problems on Plaintiff's formula sheet. (Exhibit G)

54. In or Around May 2018, Farrukh discovered that, in 2017, during the course of DIEO investigation , Defendant Anzalone had recanted the cheating accusation & **denied** accusing Farrukh of cheating stating *"Allegation that you accused Mr. Farrukh of cheating that result in him failing the course: Deny. The decision was not the result of me accusing him of cheating………….. Multiple meetings with Dr. Reeves & Dr. Das & meeting with the student, I followed the case procedure."*

55. In or Around May 2018, Farrukh discovered that, in 2017, during the course of DIEO investigation, Defendant Reeves submitted a statement in support of Anzalone with unwarranted accusations stating falsely & intentionally that he *"He (Reeves) thinks Farrukh has some gender biases, per another colleague that Reeves talked with."*

56. In or Around May 2018, Farrukh discovered that, in 2017, during the course of DIEO investigation, that Defendant Reeves also falsely & intentionally alleged that Farrukh had *"colluded"* with other students & that all the accused students had the same information on their sheets.

57. In or Around May 2018, Farrukh discovered that, in 2017, during the course of DIEO investigation Defendant Das, also submitted a statement to the DIEO in support of Anzalone, falsely alleging that *"He (Farrukh) had solved problems in the back of his formula sheet & he erased the solved problems."*

58. On November 15th, 2017, The DIEO concluded the investigation & presented its determination stating *"There is insufficient evidence to conclude that the Respondent discriminated against the Complainant on the bases of race. national origin. religion or retaliation. Therefore, a determination of no cause is hereby issued for these allegations."*

59. The Final Investigative report published November 7th, 2017 intentionally omitted & failed to mention the revision of cheating accusation by Defendant Anzalone. (Exhibit H)

60. Shortly after the accusation of cheating in April 2017, Farrukh requested the intervention of the Executive Associate Dean, Jose-Zayas Castro into the matter. Castro informed Farrukh that Farrukh would need to contact the Office of the Legal Counsel at USF to address his concerns with USF. He declined any involvement & intervention into the matter.

61. Farrukh then hired the services of Mr. Richard Asselta, Esquire who is an attorney specializing in Education Law.

62. On November 2, 2017, Mr. Asselta representing Farrukh as a client drafted a demand letter to USF. The letter outlined inaccuracies & poor conduct of faculty & the immigration staff at USF in handling of the academic integrity violation & other academic & immigration actions taken by USF that had given rise to the current situation jeopardizing Farrukh's academic progression that ultimately resulted in the loss of his engineering degree.(Exhibit I)

63. USF denied redressing any of the demands stated in the demand letter & considered all matters closed at University level.

64. Farrukh subsequently appealed the DIEO determination to the Office of the President, USF. Farrukh highlighted & raised objection on the transparency of the final report. Farrukh included additional notes in the appeal that showed that the DIEO conducted the investigation in partiality, omitting facts & information that would otherwise indicate intentionally wrongful & discriminatory actions & procedures by Defendants Anzalone, Reeves & Das. (Exhibit H)

65. On or around December 20th, 2017, DIEO investigation is concluded at the highest level of the office of University President. The DIEO verdict was upheld. At this point the case is considered closed at University level. The letter states *"Virtually all of the narratives in your appeal consist of taking issue with specific statements made by those interviewed as part of this investigation or conclusions of the investigator. Those comments are almost entirely directed toward disputing the determination of your having engaged in an academic integrity violation. Notably for purposes of this appeal, you have not provided any additional evidence that you were the object of differential, discriminatory treatment because of your race, national origin, or religion, nor that you were specifically targeted for retaliation."*

66. In or Around January 2018, USF added an additional 47 credits to Farrukh's academic record on degree works. These credits came from Farrukh's high school certificate that he had earned in 2009, 2010 &2011. (Exhibit J)

67. USF allows a maximum of 50% transfer credit on a 128-credit hour degree. That means a student can only transfer a maximum of 64 credit hours. With the deliberate addition of 47 credits from Plaintiff's high school transcripts, USF has intentionally, maliciously & wrongfully barred Plaintiff from bringing in the necessary engineering courses he had completed at Lamar University & the University of Southern Mississippi (USM).

68. Advanced credit such as those granted transfer by USF in or around January 2018 are generally granted to freshman students at starting college. USF did not permit Farrukh the benefit of advanced credit as white American students are afforded when he started as freshman in 2013, causing Farrukh to spend more time, money & effort to repeat courses at USF that he shouldn't have to do & only applied those credits in 2018 that would make grounds for denying Farrukh any more transfer of credit.

69. On or around January 18th, 2018, Farrukh filed a grievance complaint with the Florida Board of Governors.

70. On January 22nd, 2018, an email from Teresa Roach representing Florida Board of Governors stated; *"We have received your email that was sent to the Florida Board of Governors regarding your allegation of discrimination with respect to a grade received during your time at the University of South Florida - Tampa. We have reviewed your complaint & have been in contact with the University. The Board of Governors' internal policy is to respect the processes each university has established to address student complaints & to require that students exhaust all appropriate internal university processes before seeking an external review.  It is our understanding that you have appealed the findings of the Office of Diversity, Inclusion & Equal Opportunity & your appeal is still pending. For this reason, our office will hold in abeyance the processing of your complaint until we are provided the results of your meeting with university officials.  However, we will continue to closely monitor this issue."*

71. On April 13th, 2018, in her final communication with Farrukh, Teresa Roach stated, *"I am in the process of following up on your request & will be in contact if & when I have more information."*. This was the last correspondence received from Ms. Roach.

72. In or around May 2019 Farrukh filed a new complaint with the Florida Board of Governors regarding the grade decision by Defendant Anzalone. Their response email states *"I understand from your previous complaint to the Board of Governors in January 2018 that you appealed the findings of the Office of Diversity, Inclusion, & Equal Opportunity at USF.  I contacted USF to check on the status of the appeal & was informed that USF completed a full due process hearing as provided by USF Regulation 3.027 (http://regulationspolicies.usf.edu/regulations/pdfs/regulation-usf3.027.pdf), which resulted in a final University decision affirming the failure based on an academic integrity violation. Based on regulations, the appropriate venue for your complaint would be with the University of South Florida administration."*

73. In or Around March 2018, Farrukh's parents traveled to the U.S. to meet with USF officials in order to mediate or seek explanation for the ways in which Farrukh had been treated by USF. Upon arriving at the college of engineering suite, they requested to meet with the dean of engineering. In a rude & condescending manner, the receptionist told Farrukh's parents to leave the premises & opened the door & hand motioned them to exit the premises after which they left.

74. On May 1st, 2018, Farrukh met with Defendant Atchley, at his office to seek a review of academic sanctions & issues hindering transfer of college credits. Defendant Atchley offered Farrukh to graduate with a bachelor's degree in General Studies as opposed to Industrial Engineering. Farrukh reminded him of the time, effort & money he has invested in pursuing a career in engineering & declined the offer. Farrukh inquired with Defendant Atchley on the accountability & fairness with respect to the conduct of

faculty given that the matters pertaining to Farrukh had been dealt with were unjust & retaliatory, to which Defendant Atchley replied *"We are answerable to the American taxpayer."* Farrukh took Defendant Atchley's racially motivated statement as condescending, ended the meeting & left Defendant Atchley's office.

75. In or Around June 2018 Farrukh met with Defendant Horton to request a change of Major to a BS/BA in Economics.

76. To Farrukh's surprise, Defendant Horton(a Black American female), who is a program adviser in the Economics Department referenced Defendant Reeves (a Black American male & faculty member in the College of Engineering) & told Farrukh that she had earlier spoken to Defendant Reeves & that Defendant Reeves was not aware that Farrukh was planning on changing his major.

77. Defendant Horton intentionally denied Farrukh's many requests for a change of major, citing a discretionary policy that required Department & College approval even though Farrukh met all requirements to switch majors.

78. In August 2018, being a Pakistani citizen, Farrukh approached the Embassy of Pakistan seeking assistance into matters. The Embassy of Pakistan, while representing Farrukh via a FEPRA release authorization wrote to USF & exchanged communication multiple times. USF denied the request to review & declined to entertain the Embassy's request.

79. On March 18th, 2019, on directives issued by The Honorable Prime Minister of Pakistan, Mr. Imran Khan, the Consul General of Pakistan, Honorable Aisha Farooqui, represented Farrukh via a FEPRA release authorization & once again, wrote a letter to USF explaining his loss of immigration status, financial situation & the facts surrounding Farrukh's dismissal from the Statistical Quality Control course. Honorable Aisha Farooqui requested USF to review & provide a fair hearing to address students concerns & allow him the right to graduation.

80. Honorable Counsel General's request was promptly denied by USF in a letter dated March 19, 2019. Among other inaccuracies in the letter, USF wrongly & intentionally referred to Farrukh as a 'former student' while Farrukh was still eligible to apply for graduation as active student. (Exhibit K)

81. In May 2019, Farrukh filed a second complaint with the Florida Board of Governors. The Board declined to review the matter & left the matter to the University Administration.

82. Plaintiff is a member of Title VI's protected class because of his racial minority status as a Pakistani national.

83. USF is an educational institution that is covered by Title VI; &, among other things, is receiving Federal financial assistance, as defined by Title VI.

84. Defendants intentionally, verbally, emotionally & physically harassed, created a hostile & damaging academic environment, & otherwise discriminated against Plaintiff -- frequently, severely, & objectively offensively -- because of his race & national origin.

13

85. The multi-year period of racial harassment & other national origin discrimination by Defendants was so severe, pervasive, & objectively offensive that it altered conditions of Plaintiff's learning environment, had the effect of unreasonably interfering with his education, & created an abusive, intimidating, hostile, & offensive educational environment that seriously harmed his psychological well-being.

86. USF failed to take prompt remedial action despite actual & constructive knowledge of the racial harassment, hostile environment, & other racial discrimination against Plaintiff.

87. Farrukh has, on the basis of race & national origin, been excluded from participation in, been denied the benefits of, & been subjected to discrimination by Defendants under USF's education program.

88. Defendant USF, through the acts of its employees treated Farrukh with more hostility & lack of helpfulness than white American students were subjected by USF.

89. As a result of Defendants actions as alleged in this Count, Plaintiff has been injured & has suffered damages, including pain & suffering, severe emotional distress & mental anguish, loss of sense of self-efficacy, loss of ability to enjoy life, dread, sadness, humiliation, academic loss, & economic loss.

90. Defendant USF's actions caused Plaintiff to suffer lost wages, benefits & front pay, emotional distress, humiliation, shame, loss of self-esteem & dignity, mortification, disgrace, embarrassment, loss of enjoyment of life, & mental anguish, & Plaintiff will continue to suffer said damages in the future.

91. Farrukh demands all relief that is just & equitable from USF, including declaratory relief, injunctive relief to properly, award him with a bachelors degree in industrial engineering, compensatory damages, costs, & attorney fees pursuant to Title VI, 42 U.S.C. § 2000d.

## COUNT 2. TITLE VI RETALIATION AGAINST USF ONLY

### 42 U.S.C. § 2000d

92. Plaintiff realleges Paragraphs 1 through 18, 19 through 86; &, states additionally or alternatively:

93. Defendants took adverse action against Farrukh because he objected to & complained about speech & acts that constitute unlawful racial harassment & other unlawful racial discrimination.

94. Farrukh has been, because of the retaliation, been excluded from participation in, been denied the benefits of, & been subjected to discrimination by Defendants under USF's education program.

95. Defendants' retaliation against Farrukh was severe enough to deter a reasonable person in his situation from bringing or maintaining complaints, objections, & complaints of racial harassment & other racial & national origin discrimination.

96. As a result of Defendants' actions as alleged in this Count, Farrukh has been injured & has suffered damages, including pain & suffering, severe emotional distress & mental anguish, loss of sense of self-efficacy, loss of ability to enjoy life, dread, sadness, humiliation, & economic loss.

97. Farrukh demands all relief that is just & equitable from USF, including declaratory relief, injunctive relief to award him a Bachelors degree in industrial engineering, compensatory damages, costs, & attorney fees pursuant to Title VI.

## COUNT 3. FEEA RACIAL DISCRIMINATION IN EDUCATION AGAINST USF ONLY

## FLORIDA EDUCATIONAL EQUITY ACT, FLORIDA STATUTE § 1000.05

98. Farrukh realleges Paragraphs 1 through 18, 19 through 81 and states additionally or alternatively:

99. This Court has supplemental jurisdiction of the subject matter of this claim by virtue of 28 U.S.C. § 1367, as to all claims arising under the laws and Constitution of the State of Florida that are so related to the claims of which this Court has original jurisdiction and which form part of the same case or controversy.

100. Farrukh has complied with notice requirements of Florida Statute 768.28.

101. As a Pakistani national, being a racial minority, Farrukh is a member of the class protected under the Florida Educational Equity Act (FEEA), Florida Statute 1000.05.

102. As a public institution of education receiving federal and State of Florida funds, USF is subject to suit under the FEEA.

103. USF treated Farrukh much worse than it treated similarly situated white students because of Farrukh's race, thereby denying him the benefits of and otherwise subjecting him to discrimination under USF's Industrial Engineering program and graduation activity.

104. The racial hostility, harassment and other discrimination against Farrukh by the USF employees was committed within the course and scope of the employees' duties as agents and employees of USF; and, at least in part, was perpetrated in furtherance of USF's interests.

105. As a result of USF's actions as alleged in this Count, Farrukh has been injured and has suffered damages, including pain and suffering, severe emotional distress and mental anguish, loss of sense of self-efficacy, loss of ability to enjoy life, dread, sadness, humiliation, academic loss, and economic loss.

106. Farrukh demands all relief that is available under the FEEA from USF, including declaratory relief, injunctive relief to properly re-award his Bachelors degree in Industrial Engineering, compensatory damages, costs, and attorney fees pursuant to the FEEA.

## COUNT 4- FEEA NATIONAL ORIGIN DISCRIMINATION IN EDUCATION AGAINST USF ONLY

### FLORIDA EDUCATIONAL EQUITY ACT FLORIDA STATUTE § 1000.05

107. Farrukh realleges Paragraphs 1 through 18,19 through 81 and 99 through 103, and states additionally or alternatively:

108. USF treated Farrukh much worse than it treated similarly situated American students and/or students of other national origin because of Farrukh's national origin, thereby denying him the benefits of and otherwise subjecting him to discrimination under USF's Industrial engineering program and graduation activity.

109. This hostility, harassment and other national origin discrimination against Farrukh by the USF employees was committed within the course and scope of the employees' duties as agents and employees of USF; and, at least in part, was perpetrated in furtherance of USF's interests.

110. As a result of USF's actions as alleged in this Count, Farrukh has been injured and has suffered damages, including pain and suffering, severe emotional distress and mental anguish, loss of sense of self-efficacy, loss of ability to enjoy life, dread, sadness, humiliation, academic loss, and economic loss.

111. Farrukh demands all relief that is available under the FEEA from USF, including declaratory relief, injunctive relief to award his Bachelors degree in Industrial Engineering, compensatory damages, costs, and attorney fees pursuant to the FEEA.

## COUNT 5. FEEA RETALIATION IN EDUCATION AGAINST USF ONLY

### FLORIDA EDUCATIONAL EQUITY ACT FLORIDA STATUTE § 1000.05

112. Farrukh realleges Paragraphs1 through 18, 19 through 81;99 through 105, 108 through 110 and, states additionally or alternatively:

113. Because Farrukh complained of racial discrimination and national origin discrimination prohibited under the FEEA and Title VI, USF treated Farrukh much worse than it treated similarly situated white students because of Farrukh's race and/or national origin, thereby denying him the benefits of and otherwise subjecting him to retaliation under USF's Industrial Engineering program and graduation activity.

114. The retaliation against Farrukh by the USF employees was committed within the course and scope of the employees' duties as agents and employees of USF; and, at least in part, was perpetrated in furtherance of USF's interests.

115. As a result of USF's actions as alleged in this Count, Farrukh has been injured and has suffered damages, including pain and suffering, severe emotional distress and mental anguish, loss of sense of self-efficacy, loss of ability to enjoy life, dread, sadness, humiliation, academic loss, and economic loss.

116. Farrukh demands all relief that is available under the FEEA from USF, including declaratory relief, injunctive relief to properly award his Bachelors degree in industrial engineering, compensatory damages, costs, and attorney fees pursuant to the FEEA.

## COUNT 6. RACIAL DISCRIMINATION IN THE MAKING & ENFORCEMENT OF CONTRACTS AGAINST INDIVIDUAL DEFENDANTS ONLY 42 U.S.C. § 1981

117. Plaintiff realleges Paragraphs 1 through 18, 19 through 81; &, states additionally or alternatively:

118. Farrukh entered into a written contract with USF for an education that implicitly includes freedom from severe or pervasive racial harassment, racial hostility, & other racial discrimination by USF employees in the terms & conditions of the educational environment.

119. Each of the individual Defendants treated Farrukh much worse than they treated similarly situated white American students because of Farrukh's race & national origin, thereby violating his right to make & enforce his USF contract.

120. Each of the individual Defendants acted under color of state law, & acted willfully, wantonly, maliciously, & with deliberate & callous indifference to Farrukh's federally protected rights.

121. But for the unlawful, false & racially discriminatory actions of the Defendants, Plaintiff would not have suffered any injury & would have in his possession his well-earned, paid for, unconditional, certified & conferred bachelors degree in industrial engineering from the University of South Florida & an ability to maintain a lawful visa status to have the opportunity to further his academics and/or have a professional career in engineering.

122. As a result of the individual Defendants' actions as alleged in this Count, Farrukh has been injured & has suffered damages, including pain & suffering, severe emotional distress & mental anguish, loss of sense of self-efficacy, loss of ability to enjoy life, dread, sadness, humiliation, & economic loss.

123. Farrukh demands all relief that is just & equitable from each individual Defendant, jointly & severally, including declaratory relief, injunctive relief to properly award him with a bachelors degree in industrial engineering, compensatory damages, punitive/exemplary damages, costs, & attorney fees pursuant to 42 U.S.C. § 1988.

## COUNT 7. RACIAL DISCRIMINATION IN PAINS, PENALTIES, & EXACTIONS AGAINST INDIVIDUAL DEFENDANTS ONLY 42 U.S.C. § 1981

124. Plaintiff realleges Paragraphs 1 through 18,19 through 81; &, states additionally or alternatively:

125. Under Section 1981, Farrukh has the right to be subject to punishment, pains, penalties, & exactions of every kind like those to which white people are subjected, & to no other.

17

126. Each of the individual Defendants treated Farrukh much worse than they treated similarly situated white students because of Farrukh's race &/or national origin, thereby subjecting Farrukh to punishment, pains, penalties, & exactions unlike those to which USF white students are subjected.

127. Each individual Defendant acted under color of state law, & acted willfully, wantonly, maliciously, & with deliberate & callous indifference to Farrukh's federally protected rights.

128. But for the unlawful, false & retaliatory actions of the Defendants, Plaintiff would not have suffered any injury & would have in his possession his well-earned, paid for, unconditional, certified & conferred bachelors degree in industrial engineering from the University of South Florida.

129. As a result of the individual Defendants' actions as alleged in this Count, Farrukh has been injured & has suffered damages, including pain & suffering, severe emotional distress & mental anguish, loss of sense of self-efficacy, loss of ability to enjoy life, dread, sadness, humiliation, & economic loss.

130. Farrukh demands all relief that is just & equitable from each individual Defendant, jointly & severally, including declaratory relief, injunctive relief to properly award him with a bachelor's degree, compensatory damages, punitive/exemplary damages, costs, & attorney fees pursuant to 42 U.S.C. § 1988.

## COUNT 8. AGAINST INDIVIDUAL DEFENDANTS
## RACIAL & NATIONAL ORIGIN DISCRIMINATION 42 U.S.C 1981

131. Plaintiff re-alleges paragraphs 1 through 18 & 19 through 81,118 through 122,125 through 129 as though fully set forth at length herein & states additionally or alternatively:

132. Plaintiff is a Pakistani citizen who is a minority, non-US citizen resident of Tampa, Florida.

133. Verbal comments of defendant Latter reflect her inner bad faith nexus as defendant Latter is academic program specialist (IMSE USF) where Farrukh's academic progression is hindered.

134. On September 10,2014, Defendant Latter, who, at all relevant times, was a USF Industrial Management System Engineering Department's academic program specialist acted willfully, wantonly, maliciously, & with deliberate & callous indifference to Farrukh's federally protected rights & reported to USF police department for an alleged disturbance complaint against Farrukh, when Farrukh was merely patiently waiting in an attempt to secure an appointment with defendant Das. At the time Latter reported Farrukh to USFPD, Latter knew that Farrukh was an International Student from Pakistan.

135. Anzalone knew Farrukh was an International student & discriminated against Farrukh because of his race &/or national origin by falsely accusing Farrukh of an academic

integrity violation that resulted in him failing the course. Anzalone later denied accusing Farrukh of cheating in the Statistical Quality Control exam.

136. Anzalone discriminated against Farrukh because of her animus towards his race &/or national origin & elected to not grade Farrukh's coursework despite Farrukh meeting deadlines & completing assigned coursework.

137. On information & belief, Anzalone granted preferential treatment in course grading to at least one Hispanic American student while discriminating against Farrukh because of his race &/or national origin. The student who would be named later was granted a passing grade even though he lacked the criteria to pass course.

138. On information & belief, Anzalone granted preferential treatment in course grading to at least one White American student while discriminating against Farrukh because of his race &/or national origin. The student who would be identified later was acquitted from an academic dishonesty charge in the same time frame & situated in a similar circumstance as Farrukh.

139. Reeves discriminated against Farrukh because of his race &/or national origin knowing he was the only Pakistani national in the undergraduate class of 2017 & an International student by stating & making false accusations in public records & public meeting's that Farrukh has *"some gender biases"*. Reeves has admitted in public records that these views were also shared by another member of the faculty that Reeves did not name.

140. On two occasions, Reeves & Latter discriminated against Farrukh because of his racial minority status &/or national origin knowing he was the only Pakistani national & an international student in the undergraduate class of 2017 by having worked in concert & denied Farrukh the right to enroll into courses that he needed to stay on track with his graduation plan. Reeves & Latter did not deny American students the right to enroll into courses in the same way as Farrukh was subjected by them.

141. On information & belief, Anzalone, Reeves & Das discriminated against Farrukh because of his race &/or national origin knowing he was the only Pakistani national in the undergraduate class of 2017 & an international student, & acted in concert to wrongly, wantonly & maliciously sanction Farrukh with a failing grade in the statistical quality control course (ESI4221) during Spring 2017.

142. Taylor, Schwartz & Hall discriminated against Farrukh because of his race &/or national origin & acted in concert to intentionally damage Farrukh by taking benefit of having knowledge of him being a racial minority & a foreign national of Pakistani descent. No White American student suffered the brunt of this hostility as Farrukh did.

143. Bloise discriminated against Farrukh because of his race &/or national origin knowing he was a foreign national & made degrading comments about Plaintiff in front of students & staff to humiliate Plaintiff & denied him access to documentation that he had been asked to pick up. No White American student encountered a similar hostile behavior by Bloise as Farrukh did.

144. Gupta discriminated against Farrukh because of his race &/or national origin knowing he was a foreign national & denied Farrukh the opportunity to counter Anzalone's newfound accusation, thereby denying due process rights during the AIRB meeting.

145. Gupta discriminated against Farrukh because of his race &/or national origin knowing he was a foreign national & recommended to Bhanja to dismiss Plaintiff's appeal against being sanctioned a failing grade in the statistical quality control (ESI 4221) course taught by Anzalone knowing that Plaintiff was innocent.

146. Bhanja discriminated against Farrukh because of his race &/or national origin knowing he was a foreign national & accepted Gupta's recommendation & affirmed a false failing grade sanction on Plaintiff for the alleged academic dishonesty charge by Anzalone.

147. Horton discriminated against Farrukh because of his race &/or national origin knowing that he was a foreign national & denied him the right & freedom to pursue education for no reason other than his national origin/race by restricting him from transferring his major from Industrial Engineering to Economics, even though Farrukh met the requirements to switch majors.

148. From the Factual Allegations contained herein, Plaintiff is alleging racial animus & racially discriminatory, intentional & wrongful actions on the part of each Individual Defendants.

149. Each of the individual Defendants included in this count treated Farrukh much worse than they treated similarly situated students of different national origins, races & especially White American students because of Farrukh's race &/or national origin, thereby violating his right to make & enforce his USF contract.

150. Each of the individual Defendants included in this count acted under color of state law, & acted willfully, wantonly, maliciously, & with deliberate & callous indifference to Plaintiff's federally protected rights.

151. Each of the individual Defendants included in this count in discriminating against Farrukh because of his Race & National Origin, each of the individual defendants included in this count acted willfully, wantonly, maliciously, & with deliberate & callous indifference to Plaintiff's federally protected rights.

152. The individual Defendants intentionally inflicted personal injury upon Farrukh, knowing him to be particularly vulnerable because of his racial & national origin minority status at USF, his immigration status as a foreign student, and his previous complaints and objections.

153. Plaintiff has been injured & his injuries would not have occurred but for each Defendant's unlawful conduct.

154. As a result of the actions of Individual Defendants included in this count, Plaintiff has suffered & continues to suffer, past & future monetary losses, including damages in the form of lost wages & other benefits, damages to his future career & to his professional & personal reputations, humiliation, emotional pain & suffering, mental anguish &

stress, loss of enjoyment of life, & other non-pecuniary losses, & Plaintiff will likely continue to suffer these losses & impairments in the future.

155. Farrukh demands all relief that is just & equitable from each individual Defendant, jointly & severally, including declaratory relief, injunctive relief to properly adjust his grade, reward a bachelors degree in industrial engineering, compensatory damages, costs, & attorney fees pursuant to 42 U.S.C. § 1988.

## COUNT 9. RETALIATION AGAINST INDIVIDUAL DEFENDANTS ONLY 42 U.S.C. § 1981

156. Plaintiff realleges Paragraphs 1 through 18, 19 through 81;118 through 122 &,125 through 129; and, states additionally or alternatively:

157. Farrukh is protected against retaliation under Section 1981 for attempting to assert his rights protected under Section 1981.

158. Each individual Defendant retaliated against Farrukh for complaining about or objecting to violations by the individual Defendants &/or other USF employees of his rights protected under Section 1981.

159. Each individual Defendant acted under color of state law, & acted willfully, wantonly, maliciously, & with deliberate & callous indifference to Farrukh's federally protected rights.

160. The individual Defendants intentionally inflicted personal injury upon Farrukh, knowing him to be particularly vulnerable because of his racial & national origin minority status at USF, his immigration status as a foreign student, and his previous complaints and objections.

161. But for the unlawful, false & retaliatory actions of the Defendants, Plaintiff would not have suffered any injury & would have in his possession his well-earned, paid for, unconditional, certified & conferred bachelors degree in industrial engineering from the University of South Florida.

162. As a result of the individual Defendants' actions as alleged in this Count, Farrukh has been injured & has suffered damages, including pain & suffering, severe emotional distress & mental anguish, loss of sense of self-efficacy, loss of ability to enjoy life, dread, sadness, humiliation, & economic loss.

163. Farrukh demands all relief that is just & equitable from each individual Defendant, jointly & severally, including declaratory relief, injunctive relief to properly award him with a bachelors degree in industrial engineering, compensatory damages, costs, & attorney fees pursuant to 42 U.S.C. § 1988.

## COUNT 10. DISCRIMINATION & RETALIATION AGAINST INDIVIDUAL DEFENDANTS- 42 U.S. C. SECTION 1983 ("SECTION 1983)

164. Farrukh realleges Paragraphs 1 through18, 19 through 85, 118 through 122, 125 through 129, and 156 through 160; and, states additionally or alternatively:

165. Farrukh attended USF for an education that includes freedom from severe or pervasive, racial hostility, and other racial and/or national origin discrimination by USF employees in the terms and conditions of the educational environment.

166. Farrukh attended USF for an education that includes freedom from retaliation for his complaining about severe or pervasive racial harassment, racial hostility, and other racial and/or national origin discrimination by USF employees in the terms and conditions of the educational environment.

167. Under the Fourteenth Amendment of the Constitution of the United States, Farrukh has equal rights as people of all nationalities and races to attend USF free of all forms of unlawful racial & national origin discrimination.

168. Under Title VI (42 U.S.C. § 2000d.), Farrukh has the same right as people of all nationalities and races to attend USF free of all forms of unlawful racial/national origin discrimination and retaliation.

169. Under 42 U.S.C. § 1981, et seq.), Farrukh has the same right as White American students to attend USF free of all forms of unlawful racial and national origin discrimination and retaliation.

170. All individual Defendants treated Farrukh much worse than they treated similarly situated White American students because of Farrukh's race and/or national origin and retaliated against him for complaining about such unlawful discrimination.

171. In violation of 42 U.S.C. § 1983, all individual Defendants' violations of Farrukh's constitutional and other federal rights were committed under color of state law.

172. All of the individual Defendants' violations of Farrukh's rights, as alleged in this Count, were committed with callous disregard of his federally protected rights.

173. As a result of each individual Defendants' actions as alleged in this Count, Farrukh has been injured and has suffered damages, including pain and suffering, severe emotional distress and mental anguish, loss of sense of self-efficacy, loss of ability to enjoy life, dread, sadness, humiliation, and economic loss.

174. Farrukh demands all relief that is just and equitable from each individual Defendant, jointly and severally, including declaratory relief, injunctive relief to properly award his Bachelors degree in Industrial Engineering, compensatory damages, punitive damages, costs, and attorney fees pursuant to 42 U.S.C. § 1988.

**COUNT 11-DEFAMATION OF CHARACTER, LIBEL & SLANDER BY INDIVIDUAL DEFENDANTS (28 U.S.C § 4101)**

175. Plaintiff re-alleges paragraphs 1 through 18,22 through 23,25,30,32,35,37 through 58, and 70 as though the same were set forth at length herein & states additionally or alternatively:

176. Defendant Anzalone intentionally, maliciously, & falsely accused Plaintiff both verbally in the presence of third parties & within public records of academic

misconduct & such actions tarnished Plaintiff's reputation among the USF student body.

177.Defendant Anzalone's decision to fail Farrukh in Statistical Quality Control course became a common topic of discussion among the student body.

178.Defendant Anzalone's decision to intentionally, maliciously & falsely failed Farrukh in Statistical Quality Control course that became a common topic of discussion among the student body.

179.At the time of her statements and decisions regarding Plaintiff, Defendant Anzalone knew that such statements, actions, and decisions concerning Farrukh were incorrect and false.

180.Defendant Reeves stated intentionally, maliciously & falsely in public records & openly in at least one meeting with another Faculty member, that Plaintiff was guilty of gender bias.

181.Defendant Reeves further stated intentionally, maliciously & falsely in public records that Farrukh had colluded with other students & indicated that Farrukh breached the academic integrity of the University.

182.At the time of his statements, Defendant Reeves knew his statements concerning Farrukh were incorrect and false.

183.Defendant Taylor stated intentionally, maliciously & falsely in public records that Farrukh's behavior during his prior visit was "inappropriate."

184.At the time Defendant Taylor made her statements regarding Plaintiff Defendant Taylor knew that her statements were incorrect and false.

185.In 2016, Defendant Bloise wrongfully & unjustifiably derogatorily referred to Farrukh as a "special case" in the presence of student body & staff members.

186.In 2014, Defendant Latter intentionally, maliciously & falsely reported Farrukh to USFPD for a disturbance call in the presence of at least one faculty member & a USF student.

187.Further, in 2016, Defendant Latter intentionally made false, degrading & insulting comments about Farrukh in front of at least 2 faculty members & members of student body.

188.Defendant Das stated publicly & falsely stated that: "He (Farrukh) had solved problems in the back of his formula sheet & he erased the solved the problems."

189.At the time of making his statements, Defendant Das knew his statements regarding Plaintiff were incorrect & false.

190.As a proximate result of the defamatory statements, actions & decisions of Defendants Plaintiff's reputation has been & continues to be damaged & disparaged, & Plaintiff's future employability & professional stating have been & continue to be destroyed. Plaintiff has been unable to obtain employment in his field, which caused Farrukh both monetary damages & emotional distress.

191.Plaintiff respectfully demands judgment jointly & severally against Defendants listed in this count for all relief that is just & equitable.

## COUNT 12-NEGLENT RETENTION BY DEFENDANT USF

192. Plaintiff re-alleges paragraphs 1 through 18 & 19 through 81,87,89,93 through 96 as though set forth at length herein & states additionally or alternatively:

193. Defendant USF neglected in its duty that it owed to plaintiff by denying him the benefit of 18 advanced credit hours (3 courses in Mathematics, 2 in Physics & one course in Chemistry) that would shorten the length of plaintiff's undergraduate degree program by a full academic year despite plaintiff inquiring & requesting with the USF multiple times to see if he qualified for Advanced credit. This caused the plaintiff damages that include but are not limited to putting additional time at school but also an estimated expense of $10K towards college tuition fees.

194. In September 2016, Plaintiff shared his concerns regarding Defendant Taylor & the International Office staff during an extensive meeting with Roger Brindley, Defendant Taylor's supervisor.

195. In September 2016, Plaintiff made relayed concerns regarding Defendant Taylor to the International Office Staff & to Dr. Jennifer Schneider from the USF Office of Ombuds.

196. Despite complaints & concerns, Defendant USF failed to take corrective & disciplinary action against Taylor & Hall. Instead, Defendants continued adverse actions against Plaintiff until Plaintiff was no longer in maintenance of lawful immigration status & therefore barred from applying for jobs during & after the completion of his studies.

197. USF, through the actions of its employees provided incorrect & fraudulent tuition statements to a collection agency, thereby further wrongfully damaging Plaintiff by adding financial liability & causing pain & anguish to Plaintiff.

198. USF knew or should have known that each of the individual Defendants were inflicting racial discrimination, national origin discrimination, retaliation, & severe emotional distress on Plaintiff.

199. USF had a duty to implement existing policies mandating removal or reassignment of each of the individual Defendants from positions from which those individuals could inflict racial & national origin discrimination, retaliation, & severe emotional distress on Plaintiff.

200. USF negligently failed to perform its duty to remove or reassign each of the individual Defendants from positions from which those individuals could inflict racial & national origin discrimination, retaliation, & severe emotional distress on Plaintiff.

201. As a result in failing to perform its duty as alleged in this Count, Plaintiff was injured & suffered damages, including pain & suffering, severe emotional distress & mental anguish, loss of sense of self-efficacy, loss of ability to enjoy life, dread, sadness ,humiliation, loss of an industrial engineering degree & thereby an engineering career, economic loss from in excess of $200,000.00 towards his undergraduate degree & an inability to obtain employment thereby a loss of future wages.

202. Defendant USF knew or should have known that Plaintiff would suffer injury as a result of their failure to exercise reasonable care.

203. Plaintiff has suffered, & continues to suffer, economic & non-economic losses because of the wrongful conduct of the Defendant USF.

204. As a proximate result of Defendant's negligence, the Plaintiff has been damaged & demands all relief that is just & equitable from USF & it seeks to recover all incidental, consequential, actual & exemplary damages should this Court deem the same available to Plaintiff in the premises.

### COUNT 13-NEGLIGENT SUPERVISION AGAINST USF ONLY

205. Plaintiff re-alleges paragraphs 1 through 18 & 19 through 81, 87,89,93 through 96 as though set forth at length herein & states additionally or alternatively:

206. USF knew or should have known that each of the individual Defendants were inflicting racial discrimination, national origin discrimination, retaliation, & severe emotional distress on Farrukh.

207. USF had a duty to implement existing policies mandating supervision of each of the individual Defendants to prevent them from inflicting racial discrimination, national origin discrimination, retaliation, & severe emotional distress on Farrukh.

208. USF negligently failed to perform its duty to supervise each of the individual Defendants from inflicting racial discrimination, national origin discrimination, retaliation, & severe emotional distress on Farrukh.

209. As a result in failing to perform its duty as alleged in this Count, Farrukh was injured & suffered damages, including pain & suffering, severe emotional distress & mental anguish, loss of sense of self-efficacy, loss of ability to enjoy life, dread, sadness, humiliation, & academic & economic loss.

210. Farrukh demands all relief that is just & equitable from USF, including declaratory relief, injunctive relief to properly award him with a bachelors degree in Industrial Engineering, compensatory damages, & costs.

### COUNT 14-NEGLIGENT TRAINING AGAINST USF ONLY

211. Plaintiff re-alleges paragraphs 1 through 18 & 19 through 81, 87,89,93 through 96 as though set forth at length herein & states additionally or alternatively:

212. USF knew or should have known that each of the individual Defendants were inflicting racial discrimination, National origin discrimination, retaliation, & severe emotional distress on Farrukh.

213. USF had a duty to implement existing policies to train each of the individual Defendants to prevent infliction of racial discrimination, national origin discrimination, retaliation & severe emotional distress on Farrukh.

214. USF negligently failed to perform its duty to train each of the individual Defendants to prevent infliction of racial discrimination, national origin discrimination, retaliation, & severe emotional distress on Farrukh.

215. As a result in failing to perform its duty as alleged in this Count, Farrukh was injured & suffered damages, including pain & suffering, severe emotional distress & mental anguish, loss of sense of self-efficacy, loss of ability to enjoy life, dread, sadness, humiliation, & academic & economic loss.

216. Farrukh demands all relief that is just & equitable from USF, including declaratory relief, injunctive relief to properly award him with a bachelors degree in Industrial Engineering, compensatory damages, punitive damages & costs.

## COUNT 15- BREACH OF CONTRACT BY DEFENDANT USF

217. Upon accepting Plaintiff as an enrolled student, Defendant USF entered into a written contract with Plaintiff whereby, if Plaintiff successfully completed all course requirements in Industrial Engineering, Defendant USF would, in fact, issue an Industrial Engineering Degree to Plaintiff

218. Plaintiff entered into a written contract with Defendant USF that, in exchange for successfully completing the requirements of a Degree in Industrial Engineering. Despite Plaintiff having fully performed his obligations on said contract, Defendant USF now has intentionally & wrongfully refused to perform its obligations under the contract with Plaintiff by denying him an Industrial Engineering Degree. This denial is based in the racial animus of Defendant USF.

219. Plaintiff contracted a written agreement with USF for an education that implicitly includes freedom from severe or pervasive racial harassment, racial hostility, & other racial/national origin discrimination by USF employees in the terms & conditions of the educational environment.

220. Plaintiff relied upon the promises of USF, enrolled as a USF student, paid material sums of money for courses & successfully completed all course work required for Plaintiff to obtain an Industrial Engineering Degree from Defendant USF & fully performed his contract with Defendant USF.

221. Since 2017, Farrukh has applied for graduation on two occasions (Fall 2017 & Spring 2018) based upon Plaintiff's successful completion of all course requirements required. The graduation requests were denied by the Department of Industrial & Systems Engineering, USF.

222. Despite the full & good faith performance of all contractual requirements by Plaintiff, Defendant has & continues to wrongfully refuse to grant an Industrial Engineering Degree to Plaintiff.

223. In wrongfully refusing to grant Plaintiff the Industrial Engineering Degree that Plaintiff has earned, USF has materially breached its contract with Plaintiff.

224. As a direct result of the unilateral breach of contract by USF with Plaintiff, Plaintiff has & continues to suffer material monetary damages.

225. Plaintiff seeks equitable relief and damages including declaratory relief and injunctive relief; to properly award a bachelors degree in Industrial Engineering, front pay; lost pay and benefits; liquidated damages; compensatory damages; attorneys' fees, costs and expenses; and all other relief this Court deems just and proper.

**RELIEF REQUESTED**

226. WHEREFORE, Plaintiff respectfully requests judgement against the Defendants for the following: (1) Actual damages;(2) Fees;(3) exemplary damages, as applicable;(5) pre-judgement & post judgement interest;(6) court costs;(7) such other & further relief in law & in equity as this Court may deem just & proper.

**JURY DEMAND**

227. Plaintiff hereby demands a jury trial on all issues that can be submitted to a jury.

**VERIFICATION**

Pursuant to Florida Statute, section 92.525 and under penalties of perjury, I declare that I have read the foregoing document and the facts stated in it are true and correct.

Signed and dated this ____5th____ day of June 2020, by;

*Abdulrehman Farrukh*

Abdul Rehman Farrukh

Respectfully submitted this __5th__ day of June 2020

Abdul Rehman Farrukh

5005 Sunridge Palms Drive,
Tampa, FL, 33617.
(813)-470-9676

.