UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ABDUL REHMAN FARRUKH

    Plaintiff,

v.                                          Case No. 8:20-cv-73-VMC-TGW

UNIVERSITY OF SOUTH FLORIDA
BOARD OF TRUSTEES,

    Defendant.

_____/

**ORDER**

This matter is before the Court upon consideration of Defendant University of South Florida Board of Trustees' ("the Board") Motion to Dismiss Plaintiff's Fifth Amended Complaint (Doc. # 70), filed on April 12, 2021. Plaintiff Abdul Rehman Farrukh filed a response in opposition on May 3, 2021. (Doc. # 72). For the reasons that follow, the Motion is granted.

**I.   Background**

Farrukh initiated this action pro se on January 10, 2020, alleging that the Board, its members, and various employees of the University of South Florida ("USF") mistreated him based on his race and his status as a Pakistani national. (Doc. # 1). Farrukh filed an amended complaint pro se on

1

January 21, 2020, alleging substantially the same claims. (Doc. # 5). At the time he filed his complaint, Farrukh moved to proceed in forma pauperis, which was referred to United States Magistrate Judge Thomas G. Wilson. (Doc. # 2).

In a report and recommendation filed April 2, 2020, Judge Wilson recommended deferring on ruling on the motion to proceed in forma pauperis, as the amended complaint was a shotgun pleading that asserted "mostly conclusory allegations of wrongdoing." (Doc. # 16). The Court agreed and dismissed the amended complaint with leave to amend. (Doc. # 20).

Farrukh filed a second amended complaint pro se on June 5, 2020, (Doc. # 25), but Judge Wilson concluded that the "woefully deficient" pleading remained a shotgun complaint. (Doc. # 30). Judge Wilson described the allegations supporting each claim as "conclusory and unsupported," and at times "simply baseless." (Id.). This Court agreed and dismissed the second amended complaint as a shotgun pleading, granting Farrukh leave to amend. (Doc. # 33).

Counsel subsequently filed a notice of appearance on behalf of Farrukh (Doc. # 38), and — represented by counsel — Farrukh filed a third amended complaint on November 25, 2020. (Doc. # 39). The Board moved to dismiss the third amended complaint on January 11, 2021, (Doc. # 46), which the

2

Court granted. (Doc. # 64). The Court dismissed the third amended complaint as a shotgun pleading without delving into the merits of the claims. (Id. at 6-7). However, the Court warned Farrukh that "many of the deficiencies identified by Judge Wilson [had] not been rectified in the third amended complaint. Several of the claims lack factual support and rely on broad, conclusory allegations of wrongdoing." (Id.).

Farrukh filed a fourth amended complaint on March 5, 2021, (Doc. # 65), which the Court again dismissed as an impermissible shotgun pleading without addressing the merits. (Doc. # 66).

Now, Farrukh has filed a fifth amended complaint against the Board (Doc. # 67), wherein he lists several allegedly discriminatory events that occurred while he was a student at USF. This includes a USF instructor accusing Farrukh of cheating on an exam and dismissing him from the course with a failing grade (Id. at ¶ 62), the Board upholding this sanction (Id. at ¶ 69), USF suspending Farrukh's lawful immigration status for failure to pay a fee (Id. at ¶¶ 15-16), and USF's Registrar's Office and Cashier's Office denying Farrukh's petition to enroll in spring classes. (Id. at ¶ 20). Farrukh alleges that he "complained" about the USF employees responsible for these decisions, "exposed the

discriminatory practices at USF," and generally "asserted his rights." (Id. at ¶¶ 77-84). The Board allegedly retaliated by deleting Farrukh's visa profile and "denying him the opportunity to graduate," among other things. (Id.).

Accordingly, Farrukh accuses the Board of race and national origin discrimination in violation of Title VI of the Civil Rights Act of 1964 (Count I), retaliation in violation of Title VI of the Civil Rights Act of 1964 (Count II), race discrimination in violation of the Florida Civil Rights Act ("FCRA") (Count III), retaliation in violation of the FCRA (Count IV), national origin discrimination in violation of the FCRA (Count V), and breach of contract (Count VI). (Id.).

The Board moves to dismiss the fifth amended complaint. (Doc. # 70). Farrukh has responded (Doc. # 72), and the Motion is ripe for review.

## II. Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations

4

in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). "The scope of review must be limited to the four corners of the complaint" and attached exhibits. St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002).

Additionally, motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may attack jurisdiction facially or factually. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). Where, as here, the jurisdictional attack is based on the face of the pleadings, the Court merely looks to determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the plaintiff's complaint are taken as

5

true for purposes of the motion. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).

## III. Analysis

### A. State Law Claims

Farrukh has asserted four state law claims against the Board: race discrimination (Count III), retaliation (Count IV), and national origin discrimination (Count V) in violation of the FCRA, and breach of contract (Count VI). (Doc. # 67).

The Board argues that these state law claims should be dismissed because it is immune from such suits under the Eleventh Amendment. (Doc. # 70). The Court agrees.

"It is well established that, absent an express waiver by the state, the Eleventh Amendment bars state law claims against a state in federal court." Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla., 342 F.3d 1281, 1287 (11th Cir. 2003) (citing Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98-99 (1984)). This remains true "even if the court could properly exercise pendent or supplementary jurisdiction over the state law claim." Biggs v. State of Fla. Bd. of Regents, No. 1:96-CV-185-MMP, 1998 WL 344349, at *1 (N.D. Fla. June 11, 1998) (internal citation omitted).

Immunity extends to the state itself as well as arms of the state. Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003). The Board is defined by statute as "part of the executive branch of state government," Fla. Stat. § 1001.71(3); Fla. Stat. § 1000.21(6), therefore it is an arm of the state for Eleventh Amendment purposes. See Univ. of S. Fla. Bd. of Trustees v. CoMentis, Inc., 861 F.3d 1234, 1235 (11th Cir. 2017) ("The USF Board is an 'arm' of Florida because the State of Florida defines the USF Board to be a part of its government, exercises great control over it, funds it, and pays judgments entered against it.").

"The test to determine if a state has waived its sovereign immunity is a stringent one . . . A waiver of Eleventh Amendment immunity must specifically permit suits in federal court." Barnes v. Zaccari, 669 F.3d 1295, 1308 (11th Cir. 2012) (internal citations and quotation marks omitted). "[A] State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation." Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 676 (1999)).

Here, the Court agrees that Florida has not consented to suit in federal court for any of Farrukh's state law claims.

7

### 1. **FCRA Claims**

District courts have consistently held that the Florida Legislature did not waive immunity or consent to be sued in federal court when it enacted the FCRA. See, e.g., Wells v. Bd. of Trustees of Fla. Gulf Coast Univ., No. 2:19-cv-859-JLB-NPM, 2021 WL 883333, at *3 (M.D. Fla. Feb. 8, 2021) (finding that "Florida has not consented to suit being brought against it under the FCRA in federal court" (internal citation omitted)), report and recommendation adopted, No. 2:19-cv-859-JLB-NPM, 2021 WL 878879 (M.D. Fla. Mar. 9, 2021); Biggs 1998 WL 344349, at *1 (listing cases and "join[ing] its sister courts in the Middle and Southern Districts of Florida which have explicitly held that the Eleventh Amendment serves as a bar to suits against state agencies brought under FCRA, based on the fact that the Florida Legislature made no waiver of such immunity and did not consent to be sued in federal court on claims brought thereunder when it enacted FCRA").

Accordingly, the Court agrees with the Board that the Eleventh Amendment bars Farrukh's FCRA claims in federal court. Counts III, IV, and V are dismissed for lack of subject matter jurisdiction.

## 2. Breach of Contract Claims

The Court comes to the same conclusion for Farrukh's breach of contract claim (Count VI). Although Florida has waived its sovereign immunity for certain breach of contract claims brought in its own courts, Pan-Am Tobacco Corp. v. Dep't of Corr., 471 So. 2d 4, 5 (Fla. 1984), "this waiver does not extend to breach of contract claims in federal court." Wells, 2021 WL 883333, at *3 (citing Pinkston v. Univ. of S. Fla. Bd. of Trustees, No. 8:18-cv-2651-VMC-SPF, 2019 WL 1411467, *3 (M.D. Fla. Mar. 28, 2019)).

On the contrary, "[t]he law is well settled that the Eleventh Amendment provides absolute immunity for a state common law breach of contract action filed in federal court." Harrison v. Off. of State Cts. Adm'r, No. 6:06-cv-1878-PCF-UAM, 2007 WL 1576351, at *5 (M.D. Fla. May 30, 2007). Indeed, "the Eleventh Circuit has ruled that Florida has not waived its Eleventh Amendment immunity from suit in federal court for breach of contract claims." Pinkston, 2019 WL 1411467, at *3 (citing Maynard, 342 F.3d at 1288).

Therefore, "[u]nless the language of the contract expressly provides for a waiver of the state's immunity from being haled into federal court, the Eleventh Amendment bars suit." Wells, 2021 WL 883333, at *3 (citing Parfitt v. Fla.

Gulf Coast Univ., No. 2:19-cv-727-SPC-NPM, 2020 WL 1873585, *4 (M.D. Fla. Apr. 15, 2020)). Farrukh cites no such language and fails to attach any contract that could possibly serve as a "clear declaration" of the state's intent to submit to federal jurisdiction. Id. Indeed, the fifth amended complaint is unclear what written contract is even at issue in Count VI. Therefore, this claim is due to be dismissed. See Id. (dismissing a breach of contract claim for lack of subject matter jurisdiction due to an absence of contractual language haling the state into federal court).

Accordingly, the breach of contract claim is barred and the Board enjoys Eleventh Amendment immunity as to Count VI. See Maynard, 342 F.3d at 1287 (finding USF immune from suit in federal court for breach of contract claims because "Florida has [not] waived its Eleventh Amendment immunity from suit in federal court for breach of contract"); Harrison, 2007 WL 1576351, at *5 (dismissing a breach of contract claim and holding that "the Eleventh Amendment deprive[d] the Court of jurisdiction with regard to all of Plaintiff's breach of contract claims"). Count VI is dismissed for lack of subject matter jurisdiction.

**B. <u>Federal Claims</u>**

Farrukh also asserts two federal claims: race and national origin discrimination (Count I) and unlawful retaliation (Count II) in violation of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d et. seq. (Doc. # 67).

The Board moves to dismiss both counts for failure to state a claim, arguing that the fifth amended complaint lacks sufficient facts to plead a plausible claim of discrimination or retaliation. (Doc. # 70 at 15, 22-23). The Court agrees.

**1. <u>Discrimination</u>**

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Even taking all reasonable inferences in favor of Farrukh, the fifth amended complaint fails to allege a violation of this provision.

First, Farrukh fails to adequately allege disparate treatment by the Board. True, Farrukh lists several punitive measures allegedly taken against him while he was a student at USF. However, he fails to explain how the Board treated other students — who were not of Pakistani descent — any

11

differently. See Miller v. Fla. Hosp. Waterman, No. 5:13-cv-249-WTH-PRL, 2013 WL 5566063, at *2 (M.D. Fla. Oct. 8, 2013) (dismissing a Title VI discrimination claim where the plaintiff failed to identify "how she was treated differently than any white comparators").

For example, Farrukh alleges that an instructor accused him of cheating on an exam, awarded him a zero on the assignment, and dismissed him from the course with a final grade of "F" on his transcript. (Doc. # 67 at ¶¶ 62-68). Farrukh summarily characterizes these actions as discriminatory, but fails to explain how the instructor treated other students of a different race more favorably. (Id.). Likewise, Farrukh accuses the Board of upholding the cheating sanction for discriminatory reasons, but fails to allege how the Board's treatment of him differed from its treatment of other students in comparable circumstances. (Id. at ¶¶ 69-74).

The rest of the fifth amended complaint is similarly conclusory. Farrukh claims that his immigration status was suspended for failing to pay a particular fee, but fails to explain how the Board interpreted this requirement differently for other students. (Id. at ¶¶ 15-16). He claims that he was prohibited by the Board from enrolling in spring

classes when he was unable to pay tuition, but fails to allege how the Board treated other students who failed to pay tuition more leniently. (Id. at ¶ 20).

In these scenarios and others, Farrukh simply asserts that the Board treated him in a disparate fashion, without alleging sufficient facts to support this conclusion. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

The Court therefore agrees with the Board that Farrukh fails to adequately allege disparate treatment under Title VI. Compare Sirpal v. Univ. of Miami, 684 F. Supp. 2d 1349, 1358 (S.D. Fla. 2010) (finding that a plaintiff adequately stated a claim under Title VI where the complaint alleged that "the University treated Dr. Potter and Dr. Pinto differently from Sirpal: it refused to discipline either non-Indian doctor for allegedly unethical research conduct, but it suspended Sirpal for alleged research misconduct").

Furthermore, Farrukh fails to satisfactorily allege discriminatory intent. "Title VI itself prohibits only instances of intentional discrimination." Brook v. Sistema Universitario Ana G. Mendez, Inc., No. 8:17-cv-171-JSM-AAS, 2017 WL 1743500, at *3 (M.D. Fla. May 4, 2017) (internal

13

citation omitted). Thus, to state a claim under Title VI, a plaintiff must allege facts establishing discriminatory intent. Carr v. Bd. of Regents of Univ. Sys. of Ga., 249 Fed. Appx. 146, 148 (11th Cir. 2007). "Discriminatory intent may be established by evidence of such factors as substantial disparate impact, a history of discriminatory official actions, procedural and substantive departures from the norms generally followed by the decision-maker, and discriminatory statements in the legislative or administrative history of the decision." Elston v. Talladega County Bd. of Educ., 997 F.2d 1394, 1406 (11th Cir. 1993).

The fifth amended complaint is bereft of any such allegations; Farrukh instead insists that "[the Board] treated [him] disparately from students of race and national origin different from [him] through its employees' acts." (Doc. # 67 at ¶ 54). The Court is not bound to accept this legal conclusion as true. Papasan, 478 U.S. at 286. Such an assertion must be factually supported, and the Court agrees with the Board that the fifth amended complaint lacks the necessary allegations.

Judge Wilson has notified Farrukh on two occasions that his complaint is deficient in this regard. (Doc. # 16 at 5; Doc. # 30 at 14-15). This Court has also highlighted the

conclusory nature of Farrukh's allegations and warned Farrukh that his third amended complaint continued to make legal conclusions devoid of factual support. (Doc. # 64 at 6-7). Farrukh has been granted leave to amend several times, and the last three complaints have been filed with the assistance of counsel (Doc. ## 39, 65, 67), yet Farrukh has failed to address these deficiencies. The fifth amended complaint continues to exhibit the same problems previously identified by Judge Wilson and this Court. Therefore, the Court finds it appropriate to dismiss Count I for failure to state a claim.

2. **Retaliation**

The Court finds Count II deficient for substantially the same reasons. "To meet the prima facie elements for a claim of retaliation, a plaintiff must demonstrate that: (1) he engaged in protected activity; (2) he was subjected to adverse action and (3) there existed a causal link between the adverse action and the protected activity." Chandamuri v. Georgetown Univ., 274 F. Supp. 2d 71, 84 (D.D.C. 2003) (internal citation omitted).

Farrukh's sweeping allegations fail to satisfy the first element of protected activity. Indeed, it is unclear from the fifth amended complaint precisely which actions Farrukh is even claiming as protected activity. Rather than pointing to

concrete events, Farrukh vaguely alleges that he "complained of discrimination" on various occasions, to mostly unidentified persons, over a span of several years, about generalized "discriminatory practices" at USF. (Doc. # 67 at ¶¶ 78-90).

For example, Farrukh alleges that he "challenged" a USF employee's claims about Farrukh's visa status, "asserted his rights," and "exposed the discriminatory practices" of the employee." (Id. at ¶¶ 77-78). But Farrukh fails to explain how he asserted these rights, to whom, precisely when the protected conduct occurred, and the exact nature of his challenge. (Id.). Similarly, Farrukh alleges that he "complained" about a staffer to two members of USF's international services and "exposed the discriminatory practices at USF." (Id. at ¶¶ 81-82). But Farrukh fails to allege the contents of his complaint, the context in which they arose, exactly when the complaint was lodged and in what medium, and what specific practices he raised concerns about.

The rest of the pleading contains similarly broad assertions and lacks allegations of specific actions or events. Such a complaint fails to alert the Board of the precise nature of the claims against it, "and does not provide [the Board] with sufficient notice to pursue any meaningful

16

discovery or otherwise defend the case." Miller, 2013 WL 5566063, at *2. Count II is due to be dismissed for this reason alone.

Additionally, the fifth amended complaint fails to adequately plead the third element of causation. As with his discrimination claim, Farrukh alleges several punitive measures that the Board allegedly took against him during his time at USF, such as suspending his lawful immigration license, upholding a cheating sanction, and barring him from registering for classes. (Doc. # 67 at ¶¶ 15, 77-82, 89). However, he fails to allege sufficient facts to support a causal link between any of these adverse actions and his allegedly protected conduct. Instead, Farrukh simply concludes that since he has been complaining about USF's discriminatory practices since 2015, any adverse action taken against him since that year must be related to his complaints, thus constituting retaliation. (Id. at ¶ 87).

The Court is not obligated to accept such a bare-bones conclusion as true. Papasan, 478 U.S. at 286. The fifth amended complaint fails to adequately identify any sort of causality linking Farrukh's complaints to the various actions taken by the Board. Absent such a nexus, the fifth amended complaint fails to state a claim of retaliation. See Miller,

17

2013 WL 5566063, at *2 (dismissing a retaliation claim where the plaintiff "failed to assert when she was retaliated against, the identity of the person or persons who retaliated against her, the protected activity she engaged in, and/or specified the nature and extent of her retaliation").

Again, these deficiencies have been noted by the Magistrate (Doc. # 16; Doc. # 30) and the Court (Doc. # 64), and Farrukh has been given several opportunities, both with counsel and without, to amend his pleadings accordingly. Yet the fifth amended complaint continues to allege legal conclusions without adequate factual support. Therefore, the Court finds it appropriate to dismiss Count II.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant University of South Florida Board of Trustees' Motion to Dismiss Plaintiff's Fifth Amended Complaint (Doc. # 70) is **GRANTED.**

(2) Counts I and II are **DISMISSED** for failure to state a claim.

(3) Counts III, IV, V, and VI are **DISMISSED** for lack of subject matter jurisdiction.

(4) The Clerk is directed to close this case.

**DONE and ORDERED** in Chambers in Tampa, Florida, this 27th day of May, 2021.

*Virginia M. Hernandez Covington*
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE